OTIS N. WILCOX, Appellant *v.* JOHN B. HOWELL, impleaded with others, Respondent.

A mortgagor is not estoppel from setting up fraud, in procuring him to give the mortgage, by his own certificate or written declaration that the mortgage is valid and no defense exists thereto, when such certificate was itself procured by fraud. The mortgage and certificate, being neither of them negotiable instruments, are both voidable for fraud, in whose hands soever the same may be. The doctrine of estoppel in pais rests upon equity, good conscience and honest dealing.

It is not sufficient to create an estoppel that the certificate was believed to be a protection, as matter of law; the facts stated therein must be believed and relied on as true, and a change of position induced by such reliance upon their truth.

(Argued January 10th; decided May 1, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the seventh district, affirming a judgment of the Special Term.

This was an action brought in the Supreme Court, to foreclose a mortgage for $4,000, executed by the defendant, John B. Howell and wife to Isaac Picard, and by him sold and

assigned to the plaintiff, for $3,100. It bears date the ninth day of July, 1859, and was given to secure a loan for $1,000 in money and the purchase money of a quantity of watches sold by Picard to Howell, for the price or sum of $3,000. Howell, in his answer, set up by way of recoupment or counterclaim, that the mortgage, and the bond accompanying it, were obtained by false and fraudulent representations, made to deceive and defraud him, to the effect that the watches were good gold watches, in good running order, and all right in every respect, and that they were worth from $100 to $150 apiece, whereas they were not as represented, but on the contrary, were made of base and inferior metal or composition of metals and not of gold; that the larger part were not worth to exceed ten dollars apiece, and that the whole of them were not worth in market to exceed $300; that the agents of Picard, who conducted the negotiations on his behalf and made such representations, knew them to be false, and that he, Howell, confiding and relying on such representations, purchased the watches; that he and his wife, on the delivery thereof, and the receipt of the sum of $1,000, executed and delivered the bond and mortgage, and that no other consideration, whatever, was given therefor, and that on the discovery of the fraud, he offered to return the watches and the $1,000 with interest, to Picard, and the plaintiff thereupon demanded a surrender of the bond and mortgage, and the cancellation thereof. The defendant also stated in his answer, that he had at the same time assigned to Picard the rents received upon a portion of the mortgaged property, to secure the payment of the interest to accrue on the bond, and that the plaintiff had received thereon, the sum of $420, which had been applied in payment of the bond and mortgage.

He thereupon asked a deduction from the amount claimed to be due, of the sum of $2,984, and that the plaintiff have judgment for only the residue, with interest from the 9th day of January, 1861, up to which time the payment of interest was admitted by the complaint.

The issue came on for trial on the 3d day of April, 1863, before Justice JAMES C. SMITH, and the plaintiff, to avoid the recoupment and counter claim claimed by the defendant, on the ground of such alleged false and fraudulent representations, proved the delivery to him, concurrently with the bond and mortgage, of a certificate and declaration by Howell that they were given for a good, valid consideration to the full amount thereof, and that the same were subject to no offset or defence whatever. Proof in support of the allegations in the defendant's answer was given, and there was also considerable conflicting testimony introduced in reference to the execution of the certificate, particularly on the question whether the defendant knew that its object was to enable the mortgagee to effect a sale of the bond and mortgage to the plaintiff, and that it was to be used for that purpose. The justice made and filed his decision in favor of the defendant, directing the sum of $2,600 to be deducted from the bond and mortgage, as of the date thereof, for the fraud in the sale of the watches, and the further sum of $420, the amount of the rents, as of January 9th, 1861, finding due at that date the principal sum of $1,120, and he ordered the usual judgment of foreclosure and sale for that amount, with interest thereon from the last mentioned date, after deducting therefrom the sum of $104.02, allowed to the defendant for his costs of the action, as of May 29th, 1863.

Exceptions were taken by the plaintiff to the admission of certain testimony given during the progress of the trial, and also to certain findings of the justice in his decision, which, so far as material, sufficiently appear in the opinion of the court.

Judgment in conformity with this decision was entered, and it was, on an appeal by the plaintiff, affirmed by the General Term, and the plaintiff has appealed to this court.

The case below is reported, 44 Barbour, 396.

*George F. Danforth*, for the appellant, on the question of estoppel, cited *Truscott* v. *Davis* (4 Barb., 495); *Clark* v.

*Sisson* (4 Duer, 408); *Holmes* v. *Williams* (10 Paige, 326); *Watson* v. *McLaren* (19 Wend., 557); *Manuf's Bank* v. *Hazard* (30 N. Y., 230). On the question of notice to the plaintiff, he cited *People* v. *Mead* (24 N. Y., 125); *Dey* v. *Dunham* (2 John. Ch., 182); *Jackson* v. *Burgott* (10 John., 457); *Jackson* v. *Van Volkenburgh* (6 Cow., 260); *Fraser* v. *Western* (1 Barb. Ch., 220); *Brown* v. *Blydenburgh* (7 N. Y., 141); *Williamson* v. *Brown* (15 N. Y., 354); *Ware* v. *Egmont* (31 Eng. L. & Eq., 89); *F. & M. Bank of Kent* v. *Butch. & Drov. Bank* (16 N. Y., 137).

*F. L. Durand*, on the question of estoppel, cited *Truscott* v. *Davis (supra)*; *Peabody* v. *Fenton* (3 Barb. Ch., 451); *Dunn* v. *Chambers* (4 Barb., 379); *Welland Can. Co.* v. *Hathaway* (8 Wend., 483); *Martin* v. *Angell* (7 Barb., 407); *Mech. Bank of N. Y.* v. *New York & N. H. Railroad* (3 Kern., 638); *Reynolds* v. *Lounsbury* (6 Hill, 534); 3 id., 215; 3 John. Cas., 101; *Bush* v. *Lathrop* (22 N. Y., 535); *Evans* v. *Ellis* (5 Den., 644); *Lounsbury* v. *Depew* (28 Barb., 47). As to the admission of evidence, he cited *Newton* v. *Harris* (2 Seld., 345); *Starkin* v. *People* (5 Den., 108); *Brown* v. *Cady* (19 Wend., 417). That the court will not reverse for an immaterial error, where justice has been done, he cited *Hunt* v. *Fish* (4 Barb., 325); *Huntington* v. *Conkey* (32 Barb., 227); *Page* v. *Ellsworth* (44 Barb., 640); *Forest* v. *Forest* (25 N. Y., 510).

EARL, C. The alleged fraud by the mortgagee, in obtaining the mortgage, was fully proved and does not seem to have been disputed or denied at the trial. The plaintiff, as assignee, therefore took the mortgage, subject to the defence of fraud, unless the defendant, the mortgagor, is deprived of this defence by the certificate he executed at the same time he executed the mortgage. That certificate is to the effect that the mortgage was given "for a good and valid consideration to the full amount thereof, and that the same is subject to no offset or defence whatever."

If this certificate was given by the mortgagor, without fraud, to induce the plaintiff to purchase the mortgage or to enable the mortgagee to negotiate it, and the plaintiff took the mortgage believing in, and, in good faith, relying upon the certificate, then the mortgagor would be estopped from availing himself of the defence of fraud. But there are two reasons why this certificate cannot have the effect claimed for it.

1st. The judge at Special Term found that the certificate was obtained by the mortgagee by fraud, and that it was not given to induce the plaintiff to buy the mortgage or to enable the mortgagee to negotiate it, but that it was given with the express understanding that the mortgagee should not negotiate it. The mortgage and certificate were both tainted with fraud in the hands of the mortgagee, and, not being negotiable instruments, upon what principle or theory is it that the plaintiff gets them free from this taint? How is this certificate taken out of the general rule that all instruments may be avoided for fraud? The doctrine of equitable estoppel *in pais*, is founded upon principles of equity and justice, and is only applied to conclude a party by his acts and admissions, intended to influence the conduct of another, when in good conscience and honest dealing he ought not to be permitted to gainsay them. (*Welland Canal Co.* v. *Hathaway*, 8 Wend., 483.)

It would be carrying this doctrine to a preposterous extent to hold that a party is estopped from claiming that the very instrument claimed to estop him was obtained from him by fraud. But a further test of this claim of estoppel may be applied. This certificate was given to the mortgagee, to go with the mortgage into his hands and to be retained by him. It may then be treated as if embodied in the mortgage. Suppose it had been, would any one claim that the plaintiff, by the assignment to him, would be in any better position as to the defence of fraud than the assignor? (*Mechanics' Bank* v. *New York and New Haven R. R. Co.*, 13 N. Y., 638.)

2d. But there is still another answer to this claim of

estoppel.   The judge at Special Term found that the plaintiff did not rely upon the truth of the statements in the certifi cate, in purchasing the mortgage.   There is some evidence, with circumstances and inferences from them, tending to sustain this finding, and hence it cannot be questioned here.   If all other things concurred necessary to constitute the estoppel, the plaintiff could not have the benefit of it unless he believed in and relied upon the statement of facts made.   It is not sufficient that he believed that, as a matter of law, the certificate would protect him, and hence that he would not have purchased the mortgage without it.   He must have believed the facts stated, and in good faith have relied upon them as true, and in this reliance must have purchased.   (*Shapley* v. *Abbott,* 42 N. Y., 443.)

Hence I conclude the defence of fraud, upon the facts found, was available against the plaintiff.

The court did not err in permitting proof of the value of the farm mortgaged at the time the mortgage was given.   It had some bearing upon the question of fraud, and was therefore competent.   If it did not have such bearing, then it was entirely harmless.

Neither was there error in excluding proof of the amount of judgments that were liens upon the farm at the time of the trial, nearly four years after the mortgage was given.   Such proof could have had no bearing upon any question involved. It would have been otherwise if the proof had related to judgments upon the farm at the time the mortgage was given.

I am inclined to think that the evidence of defendant Howell, as to the prior conversation and transaction between him and Rosenthall, was competent.   Rosenthall was one of the principal actors in the perpetration of the alleged fraud upon Howell, and this evidence tended to show how he came to confide in and rely upon Rosenthall, and the craft by which the latter had gained his confidence.   But if the evidence was not competent, it was harmless, as its only bearing was upon the alleged fraud in the trade of the watches, as to which there was no dispute.   It had no bearing, whatever, upon the

question of estoppel, which was solely relied on by the plaintiff.

Durand, a witness for defendant, testified that he, on behalf of Howell, called upon Isaac Picard, the mortgagee, and asked him to take back the watches and money, and give up the bond and mortgage, and that he declined. This was some days after the mortgage had been assigned to the plaintiff. He was then asked the following question: "Did you state to him in what the fraud consisted?" Plaintiff's counsel objected to this, on the ground that the witness was not a party to the suit, and his declaration could not, therefore, affect the plaintiff; and also upon the ground that the evidence established that the mortgage was assigned on the day it was executed. The court overruled the objection, and plaintiff's counsel excepted. The witness answered that he stated to Picard, in substance, that a fraud had been practiced in the matter of the watches, and that he did not make much reply, but remained very taciturn. This evidence was doubtless incompetent, but it did not amount to much, and for the reason also stated above, it was entirely harmless.

The following is a portion of the evidence of the same witness, given immediately after the evidence above alluded to, as the same appears in the printed case: "I saw Jacob Picard about the same time, and told him a great fraud had been committed on Howell, and wanted him to undo the thing and make it right; he put a roll of bills in my pocket, and said if that was not enough he would give me more. (This is received under objection and exception.) He said you do not want anything to do with the matter; according to my recollection, it was fifty dollars; I handed the bills back to him, saying it was not my mode of doing business; he took back the bills."

Jacob Picard was not a party to the suit, and there is no aspect of the case in which this evidence was competent as evidence in chief. It does not, however, follow that we must reverse this judgment. Jacob Picard had been examined as a witness for the plaintiff, and he gave evidence in reference to

the procurement of the certificate from Howell, and the assignment of the mortgage to the plaintiff, and testified in effect and substance, that the certificate was fairly and honestly obtained by him, to enable him to sell the mortgage to the plaintiff. The evidence objected to, tended to show quite an emphatic admission that the entire transaction with Howell, including the procurement of the certificate, was a fraud, and hence the evidence was proper, as contradicting the witness and affecting his credit. To have made it strictly competent, however, Picard's attention should first have been called to this conversation upon his cross-examination. But the objection to the evidence was not put upon this ground, and hence it cannot avail here. The omission to first call Picard's attention to this conversation, worked no injustice, as he was subsequently recalled and examined in reference to this conversation, and the plaintiff had the benefit of his denial and explanation of it. Hence, I conclude, but not without some hesitation, that there was no error in the reception of this evidence, for which we are called upon to grant a new trial. And I reach this conclusion the more readily, because I believe the evidence did not materially influence the result of the case, and because both law and ethics favor the judgment appealed from.

The judgment should, therefore, be affirmed, with costs.

LOTT, Ch. C. (dissenting). It was a material if not the controlling question on the trial of this action, whether the certificate and declaration of the defendant, Howell, that the bond and mortgage in question were given for a good and valid consideration, and that the same were subject to no offset or defence whatever, were so given to the mortgagee, to enable him to make a sale thereof to the plaintiff. Jacob Picard, a brother of the mortgagee, and who was his agent in the negotiations with the said defendant, which resulted in the execution of the said bond and mortgage, and the sale and assignment thereof to the plaintiff, testified that after the watches were delivered, he and the defendant went from the store of the

mortgagee to the office of Mr. Delano, the attorney who drew the papers, to close the transaction in reference to the bond and mortgage, and on the way, he said, the following conversation took place : " Going from the store to Delano's, I told him he must give the statement or certificate to enable him to sell the mortgage. Howell asked him why I wished the certificate ; I told him Mr. Wilcox would probably buy the mortgage of me, and required a certificate. We went to Mr. Delano's office ; the certificate was drawn, and signed by Mr. Howell. During the day I sold the mortgage to Mr. Wilcox. I was doing business for my brother in the whole transaction. I procured the execution of the assignment ; it was handed to Mr. Wilcox ; I handed him the bond and mortgage, assignment and certificate."

To rebut this evidence, Howell testified that one Arndt Rosenthall acted with Jacob Picard for the mortgagee, in the negotiation relative to the giving of the bond and mortgage, and that he, on the defendant stating that the amount was larger than he had calculated, stated to him that he would keep the mortgage, and would give him all the time he wanted, if he was not prepared to pay when due ; that then he, witness, and Picard, went to Delano's office ; that he and his wife there signed the bond and mortgage, and Picard handed him the certificate for execution. He then said, " I took it and read it over and asked what it was for ; he said it was nothing, only a mere matter of form ; Delano said the same thing ; it was nothing but mere form ; I asked Picard again if he would not keep the mortgage if I could not pay when due ; he said he would ; on that I signed the paper ; that is all that was said about the paper ; I relied upon that ; on the way from Picard's store to Delano's I had no conversation with Picard." * * * " Nothing was said about such a paper ; Wilcox's name was not mentioned ; I did not know him ; when Picard and I first went to Delano's office, nothing was said about such a paper ; nothing was said between me and Picard or any one about signing such a paper ; nothing was said to me about such a

paper by anybody till I saw it at Delano's office; I did not know the object of it; had never seen such a paper before; the paper was signed immediately after the bond and mortgage was signed."

Howell's wife was then examined, and corroborated her husband's testimony.  Jacob Picard, on being recalled, denied that he had told Howell that the certificate was mere matter of form and did not amount to anything, or made any such statement.

I have detailed, with particularity, the preceding statement of Picard and Howell to show that the credibility of Picard had become a very important and controlling element in determining the question whether the certificate was given for the purpose of influencing the plaintiff in the purchase of the bond and mortgage; and as bearing on such credibility, Frederick J. Durand, the defendant's attorney, was called and examined as a witness for the defendant; who, in speaking in reference to a conversation with Jacob Picard, subsequent to the execution of the bond and mortgage and after his agency in relation to it had ceased, was permitted to give the following evidence against the plaintiff's exception, viz.: "I saw Jacob about the same time and told him a great fraud had been committed on Howell and wanted him to undo the thing and make it all right; he put a roll of bills in my pocket and said if it was not enough he would give me more." The plaintiff was not present, and it is clear that these declarations, made after the commission of the alleged fraud, were not admissible to prove that fact; and the counsel of the defendant does not attempt to sustain it on that ground, but claims it to be proper evidence, on the ground, as stated in his fifth point, that "the fact bears directly upon the credibility of the witness, and as such was material to the issue and properly received."  It is true that it bore on the credibility of Picard.  It was indeed damaging in its tendency and effect.  It not only was an admission of the original fraud, but showed that he wished to influence and silence the defendant's counsel by bribery, and it doubtless injuriously affected and

impaired, if it did not entirely destroy his evidence, and the findings of the learned justice show that *he* did not credit or believe it. The testimony was not as to the general character of the witness, but it related to a particular transaction and a specific fact, of which the plaintiff could not be supposed to have any knowledge, and was not given to contradict any statement that had been made by the witness. It was therefore inadmissible.

Evidence was also permitted to be given, against the plaintiff's exception, of a conversation between the defendant and Rosenthall, previous to the negotiation for the bond and mortgage in question, in relation to the sale of some jewelry to Rosenthall which the defendant had obtained of one Strassburger, which was " offered to show that Rosenthall pretended to be a friend of witness and said that Strassburger had cheated him." The only effect of this testimony was to show that Rosenthall thereby obtained so far the confidence of Howell, as to influence him in giving credit to his representation in reference to the watches sold to him by the plaintiff. This was not admissible as against the plaintiff.

It may be proper to refer briefly to the decision of the learned justice.

After finding that the plaintiff made the execution of the statement or certificate, above referred to, " a condition of his purchasing the bond and mortgage, and would not have purchased or taken an assignment without it," and that it was, at the time of the assignment, delivered to him, he adds; " But the plaintiff did not rely upon the truth of the statement in said certificate, in purchasing said bond and mortgage."

I cannot reconcile these findings. The fact that he would not have made the purchase, or taken the assignment, without the certificate, shows that he relied, in consummating the transaction, on what was stated or certified therein.

The justice also has found that the plaintiff's knowledge, at the time of such purchase, that the defendant was largely in debt (having, in addition to two mortgages, one for $1,000, and the other for $5,000, on his real estate, judgments to the amount of $700 against him), and that a consideration of the

said bond and mortgage was in part a sale of watches, was, in connection with the terms of the said bond and mortgage, and the fact that they were offered to him, on the day of their execution, at a discount of $900, sufficient to put him on inquiry, and make him chargeable with notice of the fraud in the transaction.

I cannot concur in this conclusion, as a legal result or consequence from the facts. There was nothing peculiar or unusual in the terms of the bond and mortgage. They were made payable three years from their date, with interest, half-yearly, and contained a clause or provision that, if the interest should remain unpaid and in arrear, for ten days, after it became due, then the principal, with all arrearages of interest, should, at the option of the mortgagee, become due and payable immediately thereafter. The other facts showed that the defendant was embarrassed in his pecuniary circumstances; that his personal credit was not good; and that he was not able to give such security as lenders of money required on loans upon bond and mortgage, and that he was willing, for the purpose of raising the money he wanted, to take the watches and obtain what cash he could on the sale of them; and they, with the additional fact that the payment of the amount secured could not be demanded, if the interest was promptly paid, within three years, afforded or gave the plaintiff at least a plausible reason or pretext for asking the deduction claimed and allowed, in taking the assignment, and the production of the defendant's certificate warranted a belief of the truth of the statements therein contained; and I see no ground for holding that the plaintiff was bound to make further inquiry necessary, or that he was properly chargeable with notice of the fraud.

My conclusion is, that the judgment must, for the reasons above stated, but especially on the ground of the erroneous admission of the evidence referred to, be reversed, and that a new trial should be granted; costs to abide the event.

For reversal, LOTT, Ch. C.; for affirmance, EARL, HUNT, GRAY, and LEONARD, CC.

Judgment affirmed, with costs.