## RICHARD M. NICHOLS, Appellant, v. HENRIETTE NUSSBAUM and others, Respondents.

*Usury — mortgage — sale of — Certificate of mortgagors — when it operates as an estoppel.*

Where a bond and mortgage, executed without any consideration moving from the mortgagee, are sold to a third person or placed in his hands for negotiation, upon a usurious agreement, and the same are subsequently sold to one who purchases the same, relying upon a certificate given by the mortgagors, which states that they were executed upon a full lawful and valid consideration, and that there was no defense thereto, or equities, latent or apparent, in any way affecting the same, the parties signing the said certificate are estopped thereby from setting up the invalidity of the bond and mortgage in an action brought by the purchaser to foreclose the same.

Where such certificate is signed by the mortgagors, without knowledge of and by reason of misrepresentations made in regard to its contents, they are not thereby estopped from setting up the invalidity of the mortgage.

Where the purchaser, at the time of the purchase, knows that the bond and mortgage are usurious and void, and that the statements contained in the certificate are untrue, he can derive no benefit or protection therefrom.

Appeal from a judgment in favor of the defendants, entered upon the trial of this action by the court at Special Term.

*J. H. V. Arnold*, for the appellant.

*W. H. & D. M. Van Cott*, for the respondents.

Daniels, J. :

The object of this action was the foreclosure of a mortgage executed by the defendants, Henriette Nussbaum and Philip Nussbaum, her husband, to William Katz, upon premises owned by her on One Hundred and Sixteenth street, in the city of New York. It was made to secure the payment of $4,000, and accompanied a bond executed by the same persons. The evidence tended very decidedly to show that the bond and mortgage were made in form to the mortgagee named, simply for the purpose of being used to loan money upon them, and not for any debt owing to him. He accordingly, with the assent of the other parties to them, assigned them to Gustave A. Carris, who either purchased them himself or undertook to sell them for the parties by whom they had been executed. It is not important to the disposition of the appeal, to determine in what capacity he took the assignment of the bond and mortgage, because the plaintiff's rights are not wholly dependent upon his title to them. In form Carris was the assignee, and if he was the purchaser, as there is very good reason for supposing that he was, there can be no doubt that they were void for usury in his hands, for he acquired his title at a greater rate of interest than seven per cent, and as they were not made to secure any existing debt or obligation that rendered them usurious.

After he had acquired the title to them as he did, with a full knowledge of all the facts concerning their inception, a negotiation was entered into for their sale to the plaintiff. That was principally carried on through his attorneys. During its progress, and before the plaintiff bought the bond and mortgage, the mortgagors executed and in due form acknowledged a certificate stating, among other things, that they were executed and delivered for a full, lawful and valid consideration, and that there was no defense, off-set or counter-claim thereto, nor any equities, latent or apparent, whereby they could be in any manner impaired or affected. And evidence was given, tending to show that the plaintiff became the purchaser of the bond and mortgage, on the faith of this certificate, for the sum of $3,520, but as they could not lawfully have been sold at this rate

of discount, the plaintiff's right to collect the debt secured by them, depended upon the validity and effect of this certificate. If that was given for the purpose of inducing the purchaser to believe that they were what it described them to be, and he, acting upon the faith of it, bought them at a rate of discount which would otherwise have been unlawful, the persons executing it would be precluded by means of it, from objecting to their collection on the ground of usury. It would then estop them from asserting the fact to be different from the representation made of it by them in the certificate, and for that reason would deprive them of the benefit they might otherwise have been entitled to derive from the statute regulating the rate of interest on the loan of money. (*L'Amoreux* v. *Visscher*, 2 Comst., 278; *Real Estate Trust Co.* v. *Seagreave*, 49 How., 489.)

But the answer made in the action by the defendants, who executed the bond and mortgage, was that they were void in the plaintiff's hands for usury ; and evidence was given tending to show that the certificate was executed without knowledge of its contents, and by reason of misrepresentations made concerning it. If that were the fact, then, within the cases of *Wilcox* v. *Howell* (44 N. Y., 398) and *Dinkelspiel* v. *Franklin* (7 Hun, 339), it would not be operative, by way of estoppel, on the parties who in that manner had been induced to execute it. But the evidence on the part of the plaintiff was in decided conflict with that which the defendants gave upon this subject ; and if it was to be relied upon, established the fact that the certificate was fully explained when it was presented for execution, and was subscribed with a complete knowledge of its contents.

The learned judge, before whom this cause was tried at the Special Term, did not specifically determine which was the correct view of the evidence on this point. He simply found that before the assignment was made to the plaintiff he sent a notary to visit the persons who executed the certificate, but whether they executed it understandingly, or were induced to do so because they were deceived as to its nature or contents, he did not decide. But he put his decision of the case in the defendants' favor upon another fact entirely, which was stated to have been found by him, that the plaintiff took the assignment of the bond and mortgage, " with the knowledge of the said corrupt and usurious agreement, and when the same was subject

to and rendered void thereby, and to cover up and conceal the same." This, of course, was decisive of the case, even if the certificate had been executed properly and with the most complete knowledge of its contents; for that would not afford the least protection to a purchaser of the bond and mortgage, who, at the time he bought them, knew that the statement in the certificate was untrue, and that the securities were infected with the vice of usury. Such a certificate will only protect persons dealing with the security mentioned in it, in good faith, believing the truth of the statement made by it, and relying upon it as the basis of the purchase. A person knowing the contrary can in no way be benefited by such an instrument; for that reason, if this conclusion were supported by the evidence, it would be wholly unimportant whether the certificate was intelligently executed or not. The bond and mortgage were found to be usurious in the hands of Carris, upon evidence fairly justifying that result, and if the plaintiff had purchased them, knowing that to be their character, they were equally void after the assignment to him.

But the difficulty with the case is, that there was no evidence whatever given upon the trial in any manner tending to show that the plaintiff knew of the usurious agreement made with Carris, or that he took the assignment to cover up or conceal such an agreement. The evidence was all the other way, showing that the purchase was made upon the faith of the certificate, and without knowledge of any usurious agreement existing between Carris and the parties who executed the bond and mortgage. The learned judge probably subscribed the conclusions of fact as well as law, without examination, as they were prepared and submitted to him for that purpose; but that cannot change their effect in the case. The fact is prominently presented that the action has by that means been disposed of upon the effect of a circumstance entirely unproved. It was the pivotal point in the case, exerting a most material influence upon its final disposition against the plaintiff. For that reason the judgment affected by it cannot be sustained. (*Matthews* v. *Coe*, 49 N. Y., 57.) It should therefore be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.