(117 App. Div. 449)

BLACK v. MUTUAL LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

INSURANCE—CHANGE OF BENEFICIARY OBTAINED BY FRAUD—ASSIGNMENT OF POLICY—ESTOPPEL.

After issuance of policies on the life of J., payable to W., and while they were in W.'s possession, J. made false affidavits that they had been stolen, and requested the issuance of duplicates, which was done on the giving of indemnity bonds, signed in the names of J. and W.; the signatures of W. being forgeries. Thereupon application was made to plaintiff for loans on the duplicate policies, and he suggested that they be changed so as to be payable to J., his executors or assigns, and prepared papers to be signed by J. and W., requesting such change, and after they had been signed in their names, that of W. being forged, he went with J. to the company and presented to it such papers, and it, relying thereon, indorsed the changes on the duplicate policies. Plaintiff thereupon, on behalf of M., made a loan to J., guarantying payment thereof for a consideration, taking an assignment from J. of said policies to M. as security, which assignment was filed with the company. *Held*, that

plaintiff, who, after learning of the forgeries, instead of calling the loan and prosecuting J., was instrumental in having the loan renewed, and afterwards had the policies assigned to him, and so was not an innocent party, and did not take them in good faith, could not recover on them because of his guaranty of the loan, on the theory that he was entitled to such rights as M. had; he having been instrumental in having the change in beneficiaries made, and it having been his neglect, as much as, or more than, that of defendant, which made the fraud possible, and he having, in effect, represented J. in having the change of beneficiaries made, so that he was no more entitled to invoke the doctrine of estoppel than J. would have been, and this, though the company knew of the forgery long before plaintiff, and failed to inform him thereof, it having been under no obligation to do so.

Appeal from Trial Term, New York County.

Action by Henry M. Black against the Mutual Life Insurance Company. From a judgment for defendant, entered on a decision after trial, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Alfred G. Reeves, for appellant.

Lawrence Godkin, for respondent.

McLAUGHLIN, J.   This action was brought to recover upon two duplicate policies of life insurance, of which plaintiff is the assignee. The material facts necessary to a disposition of the question presented, and concerning which there is no dispute, are as follows:   In 1868 the defendant issued to J. Winslow Jones two policies of insurance upon his life in the sum of $10,000 each.   The beneficiary named in each policy was Addie E. Jones, wife of the insured, and, in case of her death, her children.   Addie E. Jones died in 1879, leaving, her surviving, the insured and one son, William Northey Jones.   In 1889 the defendant issued, in place of one of the policies, a paid-up policy for $5,330, payable to the same beneficiaries.   Some time in February, 1898, J. Winslow Jones presented to the insurance company two affidavits, verified by himself, which stated that his safe had been broken into and papers taken therefrom, including the two policies of insurance, and that, though he had made diligent effort to recover them, he had been unable to do so, and requested that duplicates be issued. The statement contained in the affidavits to the effect that the insurance policies were lost was untrue.   They had not been lost, but had always remained in possession of W. Northey Jones, the son of the assured and ultimate beneficiary.   The defendant signified its willingness to issue duplicate policies on receiving two bonds of indemnity, signed by J. Winslow Jones and W. Northey Jones, indemnifying it against any and all loss sustained by reason of issuing said duplicates, or by reason of any person claiming under the original policies, and on the 16th of April, 1898, two bonds were presented, which purported to be signed by J. Winslow Jones and W. Northey Jones.   The signatures, however, of W. Northey Jones were forgeries.   The defendant, in good faith, and relying upon the affidavits and the bonds of indemnity, issued the two duplicates, indorsing upon each the following statement:

"New York, April 16, 1898.

"The following is as nearly as possible a copy of a policy which appears up·on the books of the company as being still in force.

"A. Klamroth, Asst. Sec'ty."

·A few days later, and prior to the 30th of June, 1898, J. Winslow Jones applied to this plaintiff, through one P. W. Hall, for a loan on the policies of insurance, and in the course of the negotiations it was suggested by the plaintiff that the beneficiaries under the policies be changed, so as to have the same payable to the insured, or his executors, administrators, or assigns, and for that purpose plaintiff prepared and forwarded to Hall certain documents for execution.   On the 30th of June, 1898, the plaintiff, accompanied by J. Winslow Jones and P. W. Hall, presented to the defendant the duplicate policies, together with two documents, purporting to be signed by said J. Winslow Jones and W. Northey Jones, which were in the nature of requests that the beneficiaries in the policies be changed to J. Winslow Jones, his executors, administrators, or assigns.   The requests thus made were not signed by W. Northey Jones, and, in so far as his name appeared thereon, the same were forgeries.   The defendant, nevertheless, in good faith and relying upon the documents so presented, made the changes as requested and indorsed upon each policy a statement to that effect.   On the 30th of July following the plaintiff, on behalf of, one J. F. Mackley, loaned to J. Winslow Jones the sum of $7,000, having previously taken an assignment from J. Winslow Jones of said policies to said Mackley as collateral security for the payment of such loan, which assignment was, a few days later, filed with the defendant. In May, 1899, W. Northey Jones wrote the defendant, asking for the dividends on one of the policies, when he was notified by the defendant that both policies appeared upon its files to have been assigned to one J. F. Mackley.   W. Northey Jones immediately notified the defendant of his ownership of the policies and that the documents on file, purporting to be signed by him, were forgeries.   In April, 1901, the plaintiff applied, on behalf of J. Winslow Jones, to the defendant for a loan on the policies, to take the place of the Mackley loan, and he was then informed by it of the claim made by W. Northey Jones.   On the 10th of July, 1901, Mackley assigned his interest in the policies to this plaintiff; he having, when the loan was made, in consideration of $500, guarantied payment of the same.   J. Winslow Jones died on the 1st of August, 1901.   Proper proofs of his death were duly served upon the defendant by the plaintiff, and also by W. Northey Jones, and payment demanded of the policies.   In January, 1902, an action was brought by W. Northey Jones against the defendant, in the superior court, Hillsboro county, state of New Hampshire, upon the original policies; he claiming as beneficiary thereunder.   The action was tried, and resulted in a judgment in favor of the plaintiff for the full amount of the policies.   The plaintiff in this action was notified of the commencement of the action in New Hampshire, and also the time and place of trial.   Subsequently this action was brought upon the duplicates.   At the trial the complaint was dismissed, and the plaintiff appeals.

I am of the opinion that the judgment is right and should be affirmed. This plaintiff took his assignment of the policies from Mackley on the 10th of July, 1901, and in the preceding April he had information of the fraud and forgeries committed by J. Winslow Jones. In June, instead of calling the loan and prosecuting J. Winslow Jones, who was then living, he was instrumental in having the loan renewed. J. Winslow Jones, it will be remembered, did not die until August 1, 1901. The plaintiff, therefore, is not in a position to claim that, when he took the assignment of the policies in question, he was an innocent party, or that he took them in good faith. He attempts to meet this suggestion, however, by asserting that he guarantied the loan to Mackley before he acquired this information, and for that reason he is entitled to stand in Mackley's shoes. But all the frauds and forgeries connected with the policies under which plaintiff claims, or at least that portion which resulted in the change in beneficiaries, were initiated by the plaintiff himself, in order to satisfy or protect his assignor, Mackley. It was this plaintiff who insisted that the change in name of the beneficiary should be made. The written requests to change the names were prepared in the plaintiff's office, upon forms procured by him from the insurance company, and were by him forwarded to Hall for execution, and, after the same had been executed and returned to him, the plaintiff "examined the requests and remarked that they appeared satisfactory." He then presented them to the insurance company and asked that the change in beneficiaries be made. It was made upon the written requests then presented. It was the plaintiff's neglect or want of care, as much as, or more than, the defendant's, which enabled the fraud to be perpetrated. The plaintiff, therefore, is not in a position to insist that the defendant is estopped from questioning the validity of its own act in changing the beneficiaries, inasmuch as he was the one who induced the insurance company to make the change.

But it is said the insurance company was notified by W. Northey Jones, in May, 1899, of the fact of the frauds and forgeries, and it did not notify the plaintiff until April, 1901. But there was no obligation resting upon defendant to impart this knowledge to plaintiff. Plaintiff was the one who had procured defendant to make the changes, and it had a right, so far as he was concerned, to rely on what he did as being correct. No liability had then matured against the defendant, inasmuch as J. Winslow Jones was still alive, and therefore it was under no obligation to impart information to any one concerning the policies. It is clear that no liability was created against the defendant in favor of J. Winslow Jones, since the issuance of the duplicate policies and the change of beneficiaries were procured by his fraud and forgeries, and the company received no consideration for assuming any new liability; and upon the facts here presented I do not see how this plaintiff stands in any better position than J. Winslow Jones would, had he brought an action to recover. Nor do I think, for reasons already suggested, that the plaintiff is in a position to invoke the doctrine of estoppel. When he presented the written requests to change the beneficiaries, he in effect represented to the defendant that the signature of W. Northey Jones was genuine. The doctrine of equitable estoppel is based upon equity and justice, and is resorted to to conclude

a party by his acts and admissions only when, in good conscience and honest dealing, he ought not to be permitted to deny what he has said or done. Wilcox v. Howell, 44 N. Y. 398; Marden v. Dorthy, 160 N. Y. 39, 54 N. E. 726, 46 L. R. A. 694; Lawrence v. American National Bank, 54 N. Y. 432.

Finally, it is said that this case comes under the rule that, where one of two innocent parties must suffer, he must bear the loss whose action enabled the wrong to be done. This rule is invoked upon the theory that the defendant, in issuing the duplicates and changing the beneficiaries, enabled J. Winslow Jones to perpetrate a fraud upon plaintiff's assignor. But this overlooks the fact that it was the act of J. Winslow Jones, plaintiff's original assignor, which enabled the fraud to be perpetrated, and plaintiff, by his connection with the original transaction, is in no better position, so far as enforcing the duplicate policies is concerned, than J. Winslow Jones would be, had he brought an action; for, as we have already seen, he could not enforce the claim. The defendant has paid the original policies, and simply because it was induced by the plaintiff, representing the original assignor, to issue duplicates upon the theory that the originals had been lost, and to change the beneficiaries upon forgeries and fraudulent statements, it ought not to be compelled to again pay.

The judgment is right, and should be affirmed, with costs. All concur.