GEORGE WEYH, Appellant, *v.* MICHAEL S. BOYLAN, as Administrator, etc., Respondent.

Where an assignee of a bond and mortgage purchased in good faith and for value, in reliance upon a certificate made by the mortgagor at the time of the execution of the instruments, to the effect that the mortgage was a valid lien, and would be such in the hands of an assignee to the full amount of principal and interest, and that he had no defense to the mortgage or bond in law or equity. *Held,* that the mortgagor was estopped

from setting up, in an action to foreclose the mortgage, the defense of
usury; that it was immaterial that the mortgagor had not the plaintiff
in his mind at the time of signing the certificate, as it was to be taken as
if directed to whom it might concern; also that the certificate was not de-
prived of its force, because executed at the same time with the mortgage,
it was not to be considered as part of that instrument.

Also *held*, that the fact that plaintiff was a second assignee, and that the
first assignees, had knowledge of the facts and so could not avail them-
selves of the estoppel, did not prevent him from so doing.

*Wilcox* v. *Howell* (44 N. Y. 398), distinguished.

(Argued May 10, 1881; decided May 31, 1881.)

APPEAL from a judgment of the General Term of the Su-
preme Court in the first judicial department, entered upon an
order made February 9, 1880, affirming a judgment in favor
of defendant entered upon a decision of the court on trial at a
Special Term.

The action was commenced against Phelix Boylan, but he
dying, was continued against Michael S. Boylan, as his adminis-
trator. Its object was to foreclose a mortgage made to one
Owen Flaherty by Phelix Boylan, to secure the payment of his
bond of $4,000. The bond and mortgage were assigned to
Mesdames Shancupp and Goldberg and by them to the plaintiff.
The defense was usury in the inception of the mortgage, and
evidence was given bearing upon it, but the plaintiff in answer
thereto introduced a certificate in writing signed by the mort-
gagor and verified by him as true to his own knowledge, whereby
he declared " that the said mortgage is a valid lien upon the
premises therein described to the full extent of $4,000, of
principal;" which is justly owing and unpaid thereon, and that
said mortgage will be a good and valid lien upon the premises
therein described in the hands of an assignee thereof to the full
amount of said principal and interest ; that he has no defense
to the mortgage or bond, either in law or equity, or any part
thereof, also that he had received notice of the intended assign-
ment to Mesdames Shancupp and Goldberg; and that the
assignment would be taken on the faith and credit of the matter
certified in the certificate. The mortgage was recorded July
29, 1866, and, as do also the bond and certificate, bear date on

that day. They were assigned to Mesdames Shancupp and Goldberg on the 31st day of July, 1876, and by them to the plaintiff on the 31st day of August, 1877. The trial court found these facts, and also that preceding these events, Boylan being desirous of procuring a loan of $4,000 upon bond and mortgage, applied to one McKee, an attorney at law, and asked him "if he could get it for him," to which McKee replied, "he could, but that it would cost him $400," and that "the defendant then and there agreed to pay such amount for such loan." The bond, mortgage and certificate were executed in McKee's office, and so was the assignment to Mesdames Shancupp and Goldberg. It was also found that "relying upon the representations contained in said certificate, the plaintiff was induced to purchase, and did purchase and pay for said bond and mortgage the sum of $4,000." The trial judge found default in payment of the sum received, but dismissed the complaint upon findings of law: *First.* That the bond and mortgage were void in their inception for usury. *Second.* That the defendant is not estopped by the certificate from setting up such usury as a defense to the action.

*Jacob A. Gross* for appellant. The defendant is estopped by the representation in his certificate from setting up the defense of usury, or that the bond and mortgage are not good and valuable securities. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30 ; *Mason* v. *Anthony*, 3 Abb. Ct. of App. Dec. 207 ; *Payne* v. *Burnham*, 62 N. Y. 69 ; *Smith* v. *Lombardo*, 15 Hun, 415, 417 ; *Elwell* v. *Chamberlain*, 4 Bosw. 320 ; *Ferguson* v. *Hamilton*, 35 Barb. 427 ; *Dinkelspiel* v. *Franklin*, 7 Hun, 339, 346 ; *Smyth* v. *Monroe*, 19 id. 550 ; *Lesley* v. *Janson*, 41 Barb. 359 ; *Holmes* v. *Williams*, 10 Paige, 326 ; *L'Amoreux* v. *Vischer*, 2 N. Y. 278 ; *Hill* v. *Valet*, 3 N. Y. Leg. Obs. 105.) It is not necessary that the certificate be made to the plaintiff direct ; all that is required is that the assignee shall have believed the facts stated, and in good faith relied upon them as true, and purchased on this reliance. (*Lynch* v. *Kennedy*, 34 N. Y. 151 ; *Payne* v. *Burnham*, 62

id. 69 ; *Mechanics' Bk. of B.* v. *Townsend,* 29 Barb. 569 ; *Chamberlain* v. *Townsend,* 7 Abb. Pr. 31 ; *Wilcox* v. *Howell,* 44 N. Y. 398 ; *Truscott* v. *Davis,* 4 Barb. 495.) Evidence of negligently signing the certificate, while ignorant, is not sufficient to rebut the certificate. (*Dinkelspiel* v. *Franklin,* 7 Hun, 339 ; 72 N. Y. 108.)

*Manning C. Wells* for respondent. The original transaction being usurious, the certificate does not operate as an estoppel in favor of the plaintiff who was a stranger to the transaction in which it was given. (*Mechanics' Bk.* v. *N. Y. & N. H. R. R. Co.,* 13 N. Y. 638 ; *Jackson* v. *Brinckerhoff,* 3 Johns. Cas. 101 ; *Mayenborg* v. *Haynes,* 50 N. Y. 675 ; *Reynolds* v. *Lounsbury,* 6 Hill, 534; *Strong* v. *Strickland,* 32 Barb. 284.) The certificate was dated, executed and delivered at the same time with the mortgage, and was of no greater effect than if incorporated therein. So incorporated it would not constitute an estoppel. (*Clark* v. *Sisson,* 22 N. Y. 312; *Wilcox* v. *Howell,* 44 id. 402 ; *S. C.,* 44 Barb. 396.)

DANFORTH, J. It would, I think, be difficult to work out from the evidence in this case an usurious agreement, but upon another trial it may be added to or given a new direction, and therefore a consideration of what now appears would be to no purpose. But assuming the existence of usury, the question remains whether the defendant is precluded by the certificate from setting it up. It is well settled that where an assignee takes a chose in action by assignment with the debtor's assent although he merely stands by in silence, the debtor is estopped to impeach it. (*Watson's Ex'rs* v. *McLaren,* 19 Wend. 562.) Much more should he be estopped as against an assignee for value by the explicit written declaration that he has no defense or set-off to the debt assigned; and the principle on which the doctrine stands extends even to the defense of usury. (*Smyth* v. *Munroe;* * *Payne* v. *Burnham,* 62 N. Y. 69.) It is, however, subject to the qualification that the person by whom it

* 84 N. Y. 354.

is invoked must not be a stranger to the transaction, or one whose conduct the declaration was not designed to influence. The defendant contends that the plaintiff is excluded from its benefit by both of these conditions. First. The plaintiff is an assignee for value, and it is evident that the certificate made by the defendant contains a representation inconsistent with his defense. He says, however, the statement in the certificate is fictitious. The plaintiff replies, it is nevertheless to be treated as true; and upon this, unless the defendant's position is well taken, he must prevail. It does not appear that the defendant had the plaintiff in his mind when the statement was made, but he did have the subject-matter of his false representations, and I am unable to give less effect to the certificate than it would be entitled to had it been addressed directly to the plaintiff. It is to be taken as if directed to whom it might concern. It related to an act not only likely to, but which he anticipated would, occur — an assignment and the purchase of the mortgage by an assignee — hence his representation in terms that "it will be good and valid in the hands of an assignee;" to such an one, whoever he may be, the defendant addresses his statements. The plaintiff in fact read these statements, and relying upon the representations, became an assignee and paid the full sum, for the payment of which the mortgage purported to be a security. It can hardly be necessary, in view of such facts, to look up authorities to show that the defendant cannot now say the statements were false. The ground on which he is precluded from saying so is that to permit it would be contrary to equity and good conscience. Under the statute relating to interest, his submission to pay usury gives him a legal defense, but upon the circumstances of the case he would, if it prevailed, obtain an unconscientious advantage at the expense of an innocent person, and so he should not be allowed to maintain it. And to no other effect can the doctrine of estoppel, which Coke declares to be "an excellent and curious kind of learning" (Coke's Litt. 352 a.), be better applied. In such a case it cannot be said to be odious, for it thus suppresses fraud and promotes honesty and

fair dealing. The transfer of the mortgage was effected upon the defendant's representations of its validity, and the plaintiff acted upon those representations. There is, however, authority for this result. In the very elaborate and carefully considered opinion of PERLEY, Ch. J., pronounced in *Horn* v. *Cole* (51 N. H. 287), he says: "If the representations are such, and made in such circumstances, that all persons interested in the subject have the right to rely on them as true, their truth cannot be denied by the party that has made them against any one who has trusted to them and acted on them." In *Holbrook* v. *N. J. Zinc Co.* (57 N. Y. 616), a case of estoppel was said to be made out when a representation was made with a view or expectation that it would be acted upon by another, and it had been so acted upon, and the person relying upon the representation would be injured if it was withdrawn. There was then before the court a party, claiming by assignment under a certificate of stock issued to one W. T. Riggs, insisting that the defendant should recognize it. Upholding that claim, the court say: "When the defendant issued its certificate to William T. Riggs, it affirmed to all persons who might deal with him, that he owned a certain portion of its capital stock and had full power to transfer it." Adding: "Any purchaser has a right to rely upon this statement, and to claim the benefit of an estoppel in its favor;" and the decision is put not upon any view of the negotiability of the certificate, but upon the principles, appertaining to the doctrine of estoppel. In *Ashton's Appeal* (73 Penn. St. 153), the court recognize the general principle which affects an assignee with all the equities existing in favor of the mortgagor, but say that he may be estopped as against the assignee " by the declaration that he has no defense or set-off to the debt assigned," and that "the benefit of it is not confined to the immediate assignee, to whom or for whose security it was made, but that any subsequent assignee claiming under him may avail himself of it." " When such a declaration," say the learned editors of Leading Cases in Equity, "is made in writing by a mortgagor, it becomes a

muniment of title, and may be conclusive in favor of third persons who give value on the faith of it, or whom it contributes to mislead." (*Ryall* v. *Rowles*, Lead. Cas. in Eq. [White & Tudor], vol. 2, part 2, p. 1673.)

But the learned counsel for the respondent insists that the certificate is by its terms confined to Mesdames Shancupp and Goldberg. Such is not the finding of the trial court; nor is the certificate susceptible of this limitation. The language as given in the above statement is general, addressed to any person who thereafter occupies to the mortgage the relation of an assignee. It is true the mortgagor says: "And I further certify that I have received notice of the intended assignment of said bond and mortgage by said Owen Flaherty to Helena Shancupp and Rachel Goldberg, and that such assignment will be taken on the faith and credit that all the matters herein stated are true." There is no finding that these persons knew to the contrary of the statements. But if we assume, as the respondent does, that they did, or that for some reason the estoppel would not work in their favor, it does not alter the plaintiff's position. The words of the declaration are, as we have seen, general. They relate to a subject-matter transferable by assignment and concerning which a prudent assignee would desire information. Suppose the intended assignment had fallen through, can there be a doubt that the declaration might be safely relied upon by any person who in ignorance of its falsity paid value for the mortgage? I think not. The fact that it was, in good faith, acted upon, renders it conclusive, and it is of no importance whether it was made expressly to that person or not. It was intended for any one who might contemplate a purchase of the securities, and when acted upon was equivalent to a representation or statement to him. But assume that it would not avail the first assignees, if it did not it would be because they knew the statement to be false. Their knowledge would not affect a purchaser from them in ignorance of that fact and who relied, as the plaintiff here did, upon the mortgagor's statement. He is protected by the same principle.

which a *bona fide* purchaser for value and without notice successfully invokes, although the title comes to him from a person in whose hands it is affected with notice (1 Story's Eq. Jur., §§ 409, 410), and through which one who buys a non-negotiable chose in action is protected against the claim of the true owner, where the latter has by his own affirmative act conferred the apparent title and absolute ownership upon another. (*Moore* v. *The Met. Nat. Bank*, 55 N. Y. 41; *McNeil* v. *The Tenth Nat. Bank*, 46 id. 325.) The plaintiff's right does not depend upon the real title or interest of his assignor, but is measured by the representation of the mortgagor.

Second. The next contention of the respondent is that the certificate is of no greater effect than the same language would be if written into the mortgage. It seems to me not well founded. It is true that it bears the same date, and was executed at the same time. But no fraud was practiced in obtaining it, and the statute which makes the mortgage void by no means compels a borrower to avail himself of its provisions. He may not only waive the statute, but, as we have seen, may be withheld from resorting to it. If the statement was in the mortgage, it would fall with the contract, because of the statute which would annul the instrument; but it is apart from it and goes beyond the language contained therein, and this distinction is enforced in *Clark* v. *Sisson* (22 N. Y. 312), where it was held that to estop the parties to a bill of exchange, their representations in respect to its consideration and validity must be outside the face of the bill; while in *Mechanics' Bank of Brooklyn* v. *Townsend* (29 Barb. 569), it was held that a certificate relating to the same matters, given at the time of executing the note and annexed thereto, will estop the party giving it from falsifying his own statements, and prevent his setting up the defense of usury against a subsequent holder who has discounted it for full value on the faith of the certificate. In *Wilcox* v. *Howell* (44 N. Y. 398), to which case the respondent refers as holding otherwise, the defense was not usury, but fraud, and both the mortgage and certificate were obtained by

it. But besides that, it was there found, as a fact, by the trial court, that the plaintiff did not rely upon the truth of the statements in the certificates in purchasing the mortgage. The contrary appears here, and the case is brought directly within the principle recognized in that case by the learned judge who delivered the opinion. " If," says EARL, J., " this certificate was given by the mortgagor without fraud, to induce the plaintiff to purchase the mortgage or to enable the mortgagor . to negotiate it, and the plaintiff took the mortgage, believing in and in good faith relying upon the certificate, then the mortgagor would be estopped from availing himself of the defense of fraud." Such is the case here.

It follows that the judgments of the General and Special . Terms should be reversed and a new trial granted, with costs to abide the event.

All concur, except FOLGER, Ch. J., absent.

Judgment reversed. ·