HYDE PARK TERRACE CO. v. JACKSON BROS. REALTY CO. et al.

(Supreme Court, Appellate Division, Second Department. April 10, 1914.)

1. CORPORATIONS (§ 30*)—RIGHTS OF STOCKHOLDERS.

A number of persons signed an agreement "with each and all the others to purchase such fractional interests" in certain land as were indicated opposite their names and the total subscriptions were $125,000, of which only $48,000 was paid in, which amount was delivered to a realty com-

pany. Thereafter a corporation was formed by some of the subscribers and the land was conveyed to the corporation subject to five mortgages, one of which was for $141,515, and was held by the realty company, such mortgage in fact representing a secret profit to the realty company, which had fraudulently represented to the subscribers that the land would be purchased without any advantage to it or any particular subscriber. Subscribers of $67,000 were privy to such fraud, while subscribers of $48,000 were innocent thereof and damaged therefrom. Action was brought by the corporation to cancel such mortgage on the ground of the realty company's fraud. *Held*, that it would be inequitable to permit the corporation to sue to cancel the mortgage generally for the fraud and have the entire $141,515 adjudged to it for the benefit of the subscribers who had participated in the fraud as well as those who had not; but in order to do justice the mortgage could be canceled and the amount of damages to each subscriber defrauded adjudged to the corporation to be held by it in trust for their benefit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 97–100; Dec. Dig. § 30.*]

2. MORTGAGES (§ 260*)—ASSIGNMENT—EQUITIES BETWEEN ORIGINAL PARTIES—ESTOPPEL.

Where the assignee of a mortgage made advances and took the assignment, relying on the promise of the mortgagee that an estoppel certificate from the corporate owner of the property would be furnished, as was afterwards done, and not on the certificate itself, the assignee cannot set up the certificate as an estoppel against the suit of the corporation to cancel the mortgage as a fraud on the stockholders; the certificate itself having been procured by fraud of the mortgagee.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 692; Dec. Dig. § 260.*]

Appeal from Special Term, Nassau County.

Action by the Hyde Park Terrace Company against the Jackson Bros. Realty Company and others. From an interlocutory judgment at Special Term canceling a mortgage, defendants appeal. Modified and affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and PUTNAM, JJ.

John H. Corwin, of New York City (David B. Ogden, of New York City, on the brief), for appellants.

Abram I. Elkus, of New York City (Frederic E. Mygatt, of New York City, on the brief), for respondent.

PER CURIAM. [1] In the year 1907, persons subscribed an agreement "with each and all the others to purchase such fractional interests" in land on Long Island, N. Y., "as are indicated opposite our names respectively and do agree to pay therefor at the rate of $2,900 per acre $404,900 upon the following terms": Cash August 1, 1907, $62,500; upon taking title $62,500, balance on mortgages. The total subscriptions by 17 persons were $125,000, of which only $48,000 was paid in by 12 persons and delivered to Jackson Bros. Realty Company. In October, 1907, a corporation was formed under the laws of this state by two of the persons who did pay in subscriptions to the amount of $10,000, and four subscribers to the amount of $67,000, who did not pay, for the general purpose of dealing in land and chattels, under

the name of the Hyde Park Terrace Company, with authorized capital of $150,000, of which $125,000 was issued to the incorporators and distributed to the subscribers. The deed of the land was made to the corporation under date of October 5, 1907, subject to five mortgages, of which one was for $141,515.90, stated to be held by "Jackson Brothers Realty Company," which in February, 1910, was assigned to Libbey & Dingley of Maine, who took it for value and without knowledge that it was subject to any defenses, and who thereafter were paid, without protest, the interest thereon, until this action was brought to cancel it upon the ground that it represented a secret profit to the Jackson Company, and that it was fraudulent as to the subscribers who made cash payments or as to some of them to whom, as now asserted, there had been representation by Jackson, president of the Jackson Company, or persons in privity with him, that the land would be bought of farmers without any advantage in which all subscribers did not share. The trial court found:

"That not all the subscribers to the capital stock of the Hyde Park Terrace Company were deceived and defrauded in the manner alleged in the complaint."

The representations were somewhat diverse and did not affect similarly all the paying subscribers. Indeed, it is urged that some of them received or relied upon fraudulent representations, or would be entitled to relief by reason of fraudulent concealment of facts which they were entitled to know. That is a matter for further inquiry at the trial court. For present purposes it must be assumed that some purchasers were wronged. The question then is: What remedy shall be afforded? Subscribers in the sum of $67,000 were privy to the fraud, and subscribers in the sum of not more than $48,000 were damaged thereby. It has been adjudged that the assignees of the mortgage surrender $141,515.90 to the corporation for the benefit of the holders of the $67,000 interest, as well as the $48,000 interest. Hence the principal of the mortgage to the extent of $82,448.30 would inure to the benefit of the tort-feasors, while $59,067.50 thereof would inure to paying subscribers—a result that is abhorrent to every conception of equity. When it is considered that the subscription paper provides for interests that should make the subscribers tenants in common without suggestion of a corporation, that it contemplated a purchase at a sum that included the amount of the mortgage, that the conveyance was made to the corporation subject to the mortgage, that the assignees of the mortgage purchased it, relying upon Jackson's statement that an estoppel certificate was forthcoming, and that one was prepared under the seal of the corporation and delivered, whatever effect it may have, it is most inequitable to enable the corporation to avail itself of a cause of action which some of the subscribers may have for fraud and deceit, and by virtue of it collect $82,448.30 for those who committed the fraud or were privy to it—the very persons against whom the cause of action exists. There is something abnormal in a judgment that allows the persons who did the fraudulent thing to share in the recovery for their guilt. The plaintiff, in any case, could take only such cause of action as the subscribers had and so far as they had it. Indeed, each

subscriber, having a cause of action for the deceit, may recover his damages, in his own behalf, and, if the wrongdoers were financially responsible, exact justice would be done to leave the remedy to the subscribers as each may show himself entitled, and it would be correspondingly unjust to permit the persons perpetrating the fraud to recover, or share in the compensation for their own wrong.

The case is peculiar in the fact that the wrongdoers themselves would not suffer, as in Midwood Park Co. v. Baker (Sup.) 128 N. Y. Supp. 954; Id., 144 App. Div. 939, 129 N. Y. Supp. 1135; Id., 207 N. Y. 675, 100 N. E. 1130. But they would recover the larger part of the securities which they sold to innocent purchasers. However, in this action, the same end can be reached by ascertaining the persons who signed the subscription paper and paid their subscriptions, relying upon false and fraudulent representations alleged in the complaint, as made by the Jackson Realty Company, any of its officers or any person in privity with them, and by directing that such innocent subscribers have their remedy through the medium of the plaintiff. The interlocutory judgment should direct the taking of further proofs as to the status and equities of the subscribers, and the proportion that such aggregate subscriptions fraudulently obtained bears to the whole sum subscribed, $125,000. It should then be adjudged that such damages should be paid to the plaintiff within six months after the entry of final judgment herein, subject to such extension of time as the court should make, upon due notice, and that such bond and mortgage should be adjudged to be canceled of record and surrendered to the plaintiff, unless such payment be made, to be evidenced by amendment of the judgment at the foot of the decree. Upon receiving such money, plaintiff should be declared to hold it as trustee for distribution to the persons herein found to have been defrauded, or their representatives, or the assignees of their claims or causes of action therefor, less such allowance as the court may grant the plaintiff for the expenses of this action, and that, pending such payment, the enforcement of such bond and mortgage should be enjoined.

[2] The estoppel certificate of March 1, 1910, was obtained by fraud; but, although appellants Libbey and Dingley did not know of this fraud, they made their advances without having seen the certificate and in ignorance of its terms. Mr. Jackson informed Mr. Libbey that he had such a certificate, and in effect promised that it should be furnished with the mortgage. But the advance was on the faith of Mr. Jackson's promise, not in reliance on the certificate, so as to raise a good estoppel. Payne v. Burnham, 62 N. Y. 69; Assets Realization Co. v. Clark, 205 N. Y. 105, 109, 98 N. E. 457, 41 L. R. A. (N. S.) 462.

We therefore modify finding of fact No. 21 to read: Defendants Libbey and Dingley did not make their advances and take the assignment of this mortgage relying on the representations of the estoppel certificate. They were informed of such a certificate, but it was not shown to, or delivered to, them at or before the time they made advances to purchase this mortgage.

The interlocutory judgment should be modified in accordance with this opinion, and, as so modified, affirmed, without costs in this court.