[875 NYS2d 449]

Mary Speranza et al., as Administrators of the Estate of Mark Speranza, Deceased, Appellants, v Repro Lab Inc., Respondent.

First Department, March 3, 2009

### APPEARANCES OF COUNSEL

*Ginsberg & Katsorhis, P.C.*, Flushing (*Kerry J. Katsorhis* of counsel), for appellants.

*Arthur Lawrence Alexander, P.C.*, New York City (*Danielle I. Pedras* of counsel), for respondent.

### OPINION OF THE COURT

Saxe, J.P.

This appeal considers whether plaintiffs, as the administrators of their late son's estate, may obtain possession from defendant tissue bank of certain semen specimens deposited by their son before his death, or whether that relief is precluded either by his directive that the specimens be destroyed in the event of his death or by the terms of applicable New York State Department of Health regulations.

In 1997, Mark Speranza deposited a number of semen specimens in the facility of defendant Repro Lab Inc., a tissue bank licensed by the State of New York. The specimens were frozen and stored in defendant's liquid nitrogen vaults. The record contains no information on Mark's reasons for doing so. However, the parties agree that Mark was about to undergo treatment for an illness, and was concerned about being able to conceive a child afterwards. As part of his agreement with Repro Lab, on July 30, 1997, Mark filled in and signed a form document entitled "ULTIMATE DISPOSITION OF SPECIMENS," which contained several options for the disposition of the specimens by the tissue bank in the event of Mark's death. One option on the form directs that the specimens be given to the depositor's spouse, another directs that the samples be destroyed, and a third option, with the heading "Other," leaves a blank to be filled in. Mark checked off the provision stating that in the event of his death, "I authorize and instruct Repro Lab to destroy all semen vials in its possession." The document concludes with the statement that "[t]his agreement shall be binding upon the parties and their respective assigns, heirs, executors and administrators."

Six months later, on January 28, 1998, Mark died.

Plaintiffs Mary and Antonio Speranza, Mark's parents, were named administrators of his estate, and they contacted Repro

Lab about the specimens. Plaintiffs assert that they were then informed that Mark had deposited the specimens for his use only, in that the specimens were not screened as required for donation to a member of the public. However, the lab agreed to maintain the specimens if plaintiffs continued to pay the yearly fee. The president of Repro Lab, Awilda Grillo, states that Mary Speranza pleaded with her not to destroy the specimens until she could determine her legal options, and that she acceded to that request, as long as the storage fee continued to be paid. The Speranzas paid the annual fee each year.

Mark's parents then began to seek a surrogate mother to be artificially inseminated with those semen specimens, with the hope of producing a grandchild for them. In 2005, the Speranzas contacted Repro Lab to ascertain the procedure for obtaining the specimens and were informed that the lab could not turn over the specimens; it produced for the first time the document Mark had signed specifying that the specimens should be destroyed upon his death. However, the lab continued to be willing to maintain the specimens upon payment of the annual fee.

Plaintiffs, in their position as administrators of their son's estate, then commenced this action seeking a declaration that the estate is the rightful owner of the specimens. The complaint asserts that by accepting yearly payments from them after Mark's death, the lab breached and terminated its agreement with Mark, or waived or relinquished any obligation it had to destroy the specimens, and plaintiffs constructively became the rightful and proper owners of the specimens. Plaintiffs also moved for a preliminary injunction ordering the tissue bank to preserve the sperm specimens pending the outcome of this action.

In the order challenged here, the IAS court denied plaintiffs' motion for an injunction, and then, sua sponte, dismissed the action (2006 NY Slip Op 30542[U]). As a preliminary matter, the court asserted that the contract between Mark and defendant could be reformed, in light of both Mark's desire to have a child and defendant's acceptance of storage fees from plaintiffs. Nevertheless, the court concluded that because the medical tests for disease required for donors of reproductive tissue by the Department of Health (10 NYCRR 52-8.6 [g]) had not been performed on Mark and no longer could be conducted, it would violate the law and public policy to allow the sperm to be released to plaintiffs for their use.

## Discussion

Initially, plaintiffs challenge the propriety of the sua sponte issuance of a final judgment in this matter, contending that it was premature, since only a motion for a preliminary injunction was before the court. They emphasize that there has been no discovery, they question the validity of the proffered contract, and they assert that there are scientific issues to be considered at trial which may not properly be addressed on papers related only to the application for injunctive relief.

As to the denial of the injunction, plaintiffs cite the uniqueness of the issue, the motion court's suggestion that defendant's conduct might in other contexts have warranted reformation of the contract, and the absence of prejudice or harm to defendant. Also implicit in plaintiffs' presentation is the suggestion that the balance of the equities weighs in their favor. However, although plaintiffs' plight elicits sympathy, we can find no legal basis for allowing the ultimate relief plaintiffs seek, and there are substantial grounds upon which it must be denied. Although *as between the parties,* defendant will not be harmed if plaintiffs prevail, other broader interests preclude giving plaintiffs possession of the specimens for purposes of engendering Mark's biological child, their grandchild, with the sperm he left behind.

The operative regulations of the New York State Department of Health both form the foundation of the problem presented here and necessitate its disposition. These regulations define two distinct categories of semen depositors with tissue banks: depositors and donors. A "client-depositor" is "a man who deposits reproductive tissue prior to intended or potential use in artificial insemination or assisted reproductive procedures performed on his regular sexual partner" (10 NYCRR 52-8.1 [d]). A "donor" is "a person who provides reproductive tissue for use in artificial insemination or assisted reproductive procedures performed on recipients other than that person or that person's regular sexual partner, and includes directed donors" (10 NYCRR 52-8.1 [f]). A "directed donor" by definition "includes a man providing semen to a surrogate, but who is not the regular sexual partner of the recipient" (10 NYCRR 52-8.1 [e]).

The regulations contain extensive screening and testing requirements that apply to "donors" only, and not to "depositors" (10 NYCRR 52-8.5, 52-8.6). This required screening and testing is deemed unnecessary by the regulations *only* when, at the time of the deposit, the specimen was intended to be used

only by the depositor or his regular sexual partner. Any other potential recipient, *including* a surrogate who was not the regular sexual partner of the donor, is included among those intended to be protected by these regulations, which strictly mandate thorough testing before any such use.

To further illustrate the strict limitations on the handling of semen specimens, the regulations also contain very particularized provisions for the manner in which a tissue bank must treat deposited reproductive tissue, and require the informed consent of a tissue donor, including a statement that the donor has the right to withdraw his or her consent to donation up until a specified point in the assisted reproduction process (10 NYCRR 52-8.7, 52-8.8 [a] [6]).

In view of these provisions, defendant responded in the only way it properly could when plaintiffs inquired into obtaining the specimens for insemination of a surrogate. Defendant pointed out that Mark, as a "client-depositor" rather than a "donor," had not been examined and screened as directed by 10 NYCRR 52-8.5, and that his blood and semen had not been tested for the infectious diseases covered in 10 NYCRR 52-8.6; rather, his specimens were simply stored without any medical screening or testing. Therefore, the tissue bank could not properly release the specimens for insemination of a surrogate. Nor may the court properly ignore the dictates or policy concerns of those regulations.

Notwithstanding these regulatory impediments, plaintiffs seek to either reform or terminate Mark's agreement with defendant lab so as to eliminate the applicability of the directive that the specimens be destroyed, or to otherwise claim a legal right to ownership of the specimens. We perceive no viable cause of action that would entitle them to take possession of the specimens for insemination of a surrogate to produce the child he did not create while he lived.

Initially, contrary to the motion court, we find plaintiffs' claim for reformation of the contract between the decedent and defendant to be without merit.

> "Reformation is an equitable remedy which emanates from the maxim that equity treats that as done which ought to have been done. The purpose of reforming a contract on the basis of mutual mistake is to make a defective writing conform to the agreement of the parties upon which there was

mutual assent. While the erroneous instrument must be made to correctly express the real agreement between the parties, no court can make a new contract for the parties" (27 Lord, Williston on Contracts § 70:19 [4th ed] [footnotes omitted]).

"Reformation of a written instrument is available where, because of a mutual mistake of fact, the instrument fails to express the real agreement between the parties. The equitable remedy of reformation will not make a new agreement for the parties but, instead, will establish and perpetuate the true, existing contract by making the instrument express the real intent of the parties. Reformation is only available to correct a mutual mistake in order to conform an agreement to the original intent of the parties" (27 Lord, Williston on Contracts § 70:20 [4th ed] [footnote omitted]).

The agreement here is clear and unambiguous, and nothing in the allegations of the complaint or the submissions on the motion presents grounds to conclude that it is erroneous or must be corrected in order to express the parties' real agreement.

Plaintiffs assert that Mark's purpose in storing the sperm was to assure his ability to have a child. The contract, however, is not that vague. It represents a determined choice that the sperm should be available to him so he could protect his ability to procreate *if he survived*. It does not protect any possibility that his genetic or biological issue could be created after his death; indeed, the directive that his semen be destroyed in the event of his death precludes such a possibility. Since the document conveys a clear intent that the specimens be destroyed upon Mark's death, which intent is not contrary to the asserted intent to assure his ability to have a child *while he was alive*, it cannot be said that the instrument contains an erroneous expression of the intention of the parties. Accordingly, nothing in plaintiffs' submissions would justify reforming the contract so as to permit them to fulfill their wish after his death, contrary to his express wishes.

Nor does defendant's alleged conduct, in accepting yearly storage fees without revealing the existence of the contract directing the destruction of the specimens in the event of Mark's death, and without initially informing plaintiffs that the specimens could not, under applicable law, be turned over to them, provide plaintiffs with a legal right to claim ownership of

the specimens. Whatever remedies Mark's estate might be entitled to seek for the asserted contract breach created by defendant's failure to destroy the specimens, the breach would not engender in Mark's estate a right to an ownership interest. Simply put, under applicable regulations as well as the terms of the contract between Mark and defendant, the specimens are not assets of the estate over which the administrators have possessory rights.

Rather, the legal obligations with regard to the possession and handling of the semen specimens are dictated solely and completely by the applicable Department of Health regulations. At this point, the proposed use of Mark's semen would fundamentally violate 10 NYCRR 52-8.6 (g), which requires that a semen donor be "fully evaluated and tested" prior to the use of his semen "by a specific recipient, other than his current or active regular sexual partner." Since the purpose of this statute is to protect the surrogate mother, and thereby the general public, from disease, we cannot countenance avoidance of the regulations' dictates, even though we recognize the joy that ignoring those regulations could bring to plaintiffs.

We reject plaintiffs' suggestion that the section should not apply because it was never intended to apply to a situation like this, where the depositor is deceased and thus cannot be tested. The Legislature and the Department of Health put into place protections against the spread of serious infectious and potentially fatal diseases. If, for any reason, these protections cannot be complied with, the law bars use of the sperm.

Plaintiffs also suggest that defendant must have performed this testing on Mark when he first donated the sperm, because such testing is required under 10 NYCRR 52-8.6 (g). However, as defendant correctly points out, those provisions are intended to apply only to donors, not to depositors like Mark; depositors need not be tested until they wish the sperm to be used by someone other than their regular sexual partner.

Plaintiffs not only failed to show a likelihood that they would succeed on the merits of their underlying claim seeking possession of the semen specimens (*see City of New York v Untitled LLC*, 51 AD3d 509, 511-512 [2008]), but, moreover, the assertions of the complaint and the submissions on the motion fail to justify the ultimate award of any such relief.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Jane S. Solomon, J.), entered January 30, 2007, which denied plaintiffs' motion for a prelimi-

nary injunction and declared that they have no legal right to the specimens, should be affirmed, without costs.

GONZALEZ, SWEENY, RENWICK and DEGRASSE, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered January 30, 2007, affirmed, without costs.