OPINION OF THE COURT
Freedman, J.
This foreclosure action arises from a secured loan that plaintiff Blue Wolf, an investment firm, made to defendant American Stevedoring, Inc. (ASI), an incorporated stevedore business. The parties sharply disagree about many of the circumstances surrounding the loan, but the following is not in dispute: in December 2009, ASI was suffering a self-described “cash crunch” and needed immediate financing to meet its current liabilities, including payroll. After negotiations, the parties agreed to a framework in which Blue Wolf would provide funds to ASI to keep the company afloat while Blue Wolf conducted “due diligence” to evaluate whether to make an equity investment in the company.
The loan transaction closed on January 7, 2010. The parties executed a loan agreement, pursuant to which ASI executed and delivered a promissory note in the principal amount of $1,130,000, bearing interest at a stated rate of 12% per annum and immediately payable at any time on Blue Wolfs demand. The parties also executed a collateral agreement that secured ASI’s payment of its loan obligations with liens on substantially all of the company’s assets, including industrial equipment it used for its stevedoring business.
At the closing, ASI only received $805,000 of the loan principal of $1,130,000 because, as authorized by the terms of the loan agreement, Blue Wolf withheld $325,000 of the principal in connection with certain fees and deposits. These included, first, a $50,000 “commitment fee,” and, second, a $75,000 deposit against Blue Wolf s costs and expenses in connection with the loan.
The third withholding, for $200,000, was designated in the loan agreement as a “deposit against future commitment fees” if ASI’s obligations under the note were “rolled over into a future financing transaction” between the parties. The loan agreement further provided both that the $200,000 deposit did not “constitute a commitment with respect to any future transaction,” and that if a second financing was not completed by March 31, 2010 “for any reason,” Blue Wolf “reserve[d] the right to retain all or a portion” of the deposit “as compensation for [Blue Wolf’s] time and expenses, as determined by [Blue Wolf] in its sole discretion.”
*181 Blue Wolf acknowledges that, after the demand loan closed and before the end of January 2010, it decided not to buy an equity interest in ASI or otherwise enter into a further financing transaction with the company. In March 2010, Blue Wolf sent ASI a letter demanding immediate payment of ASI’s obligations under the note, which Blue Wolf calculated to be $1,056,569, and informing ASI it “does not wish to pursue any further transactions” with the company because of its “loss of confidence” in it. Blue Wolf further informed ASI that it would only return half of the $200,000 deposit and would keep the remainder.
On May 14, 2010, Blue Wolf sent ASI another letter demanding payment of $1,172,513 and stating that it would keep the entire $200,000 deposit. On May 15, the lender began pursuing a strict foreclosure on the collateral pursuant to UCC 9-620. Blue Wolf first sent ASI a letter proposing that Blue Wolf take possession of collateral in full satisfaction of ASI’s debt, and then retracted the letter because it did not comply with the notice requirements for strict foreclosure. Blue Wolf claims that, on July 14, 2010, it sent ASI another letter, which effectively notified the company that Blue Wolf would accept ASI’s industrial machinery in full satisfaction of the loan, and that, pursuant to UCC 9-620, ASI would be deemed to have accepted Blue Wolf’s proposal if it did not object within 20 days. ASI, however, contends that it never received the July 14 letter and disputes Blue Wolf’s claimed ownership of the industrial machinery.
On July 22 and August 23, 2010, ASI wired payments totaling about $54,000 to Blue Wolf which it designated interest payments on the outstanding principal. Blue Wolf responded by letters stating that it had already foreclosed on the collateral and that ASI held it for Blue Wolfs benefit. Blue Wolf offered to sell back the collateral to ASI for $1,300,000 no later than September 7, 2010, and indicated that it would hold ASI’s tendered payments in escrow as partial payment for the collateral if ASI wanted to repurchase it.
ASI continued to dispute the ownership of the collateral and use it in its business. In September 2010, Blue Wolf commenced this action, seeking a declaration that it properly foreclosed on the collateral and now holds title to it. Blue Wolf also seeks an injunction against ASI’s further use of the collateral, and asserts related claims for conversion and other causes of action. Thereafter, Blue Wolf moved for a TRO enjoining ASI from us *182 ing the collateral in its operations and ASI cross-moved for an order dismissing the complaint on the ground that the loan transaction was usurious. With the consent of the parties, the motion court converted the cross motion for dismissal into a cross motion by ASI for summary judgment based on the affirmative defense of usury, and permitted Blue Wolf to file an additional motion for partial summary judgment on its claims.
The motion court denied Blue Wolfs motions for a TRO and partial summary judgment, granted ASI’s cross motion, and dismissed the complaint. Acknowledging that ASI had not formally objected to the foreclosure, the court found that questions of fact existed as to whether Blue Wolf gave reasonable notice of the foreclosure and whether Blue Wolf abandoned or withdrew its offer to accept the collateral in full satisfaction of ASI’s debt. With respect to the cross motion, the court held that the $50,000 fee, the $75,000 deposit, and the $200,000 deposit constituted disguised charges that should be added to the note’s stated 12% interest rate when determining whether the loan was usurious. The court calculated the actual interest rate on the loan to be 57.14% and therefore criminally usurious (see Penal Law § 190.40). The criminal usury, the court held, voided the loan transaction and barred this action.
Blue Wolf appeals, claiming that ASI failed to prove its criminal intent and that Blue Wolfs submissions to the motion court raised issues of fact whether the fee and deposits were legitimate and therefore should not be counted as interest. Blue Wolf further contends that even if the loan were criminally usurious, the proper remedy was not to void the transaction but instead to reform it so that Blue Wolf could recover the loan principal and legal interest. Finally, Blue Wolf argues that it raised issues of fact whether ASI objected to the strict foreclosure notice and that, by not formally objecting to the notice of foreclosure, ASI waived the usury defense.
We find that the loan transaction is void because it was criminally usurious as a matter of law, and accordingly the collateral agreement is unenforceable. The maximum per annum interest rate for a loan or forbearance of money is 16% under New York’s civil usury statute and 25% under the state’s criminal usury statutes (see General Obligations Law § 5-501 [civil usury]; Penal Law §§ 190.40, 190.42 [criminal]). With some exceptions that do not apply here, a corporation may assert criminal usury as a defense where the amount of the loan or forbearance is more than $250,000 and less than $2,500,000 (see General Obligations Law § 5-521 [3]).
*183 To successfully raise the defense of usury, a debtor must allege and prove by clear and convincing evidence that a loan or forbearance of money, requiring interest in violation of a usury statute, was charged by the holder or payee with the intent to take interest in excess of the legal rate {see Giventer v Arnow, 37 NY2d 305, 309 [1975]). If usury can be gleaned from the face of an instrument, intent will be implied and usury will be found as a matter of law (see Fareri v Rain’s Intl., 187 AD2d 481, 482 [2d Dept 1992]).
In this case, it can be discerned from the four corners of the loan agreement that the $200,000 deposit “against future commitment fees” constitutes additional interest within the meaning of the usury statutes. To determine whether a transaction is usurious, courts look not to its form but to its substance or real character (see O’Donovan v Galinski, 62 AD3d 769, 769-770 [2d Dept 2009]). If an instrument provides that the creditor will receive additional payment in the event of a contingency beyond the borrower’s control, the contingent payment constitutes interest within the meaning of the usury statutes (see Diehl v Becker, 227 NY 318, 326 [1919]; Browne v Vredenburgh, 43 NY 195, 198 [1870]). Here, the fate of the deposited funds was contingent on events that were entirely within Blue Wolf’s control, insofar as the loan agreement provided that it could refuse to proceed with another financing and then retain the $200,000 “in its sole discretion.”
The true character of the $50,000 “commitment fee” and the $75,000 deposit against Blue Wolf’s expenses cannot be determined from the face of the loan agreement. We need not, however, reach the question whether ASI proved those amounts constitute interest because the $200,000 of deemed interest, when added to the stated 12% annual interest on the loan principal, renders the loan criminally usurious. The standard formula for calculating an effective interest rate in usury cases is set forth in Band Realty Co. v North Brewster, Inc. (37 NY2d 460, 462 [1975]). Using the formula, we first determine the amount of annual interest payments that Blue Wolf would receive under the loan agreement and the note. That amount equals the sum of the stated annual interest of 12% on $1,130,000 ($135,600) plus the loan funds retained by Blue Wolf that are deemed to be interest ($200,000), or $335,600. Next, we determine the amount of net loan funds that ASI received at closing, which equals the gross amount of the note ($1,130,000) minus the retained interest ($200,000), or $930,000. Finally, we *184 express the interest payments as a percentage of the net loan funds: $335,600 equals 36.09% of $930,000 (see id. at 462). The effective rate of interest for the demand loan, 36.09%, exceeds the legal rate.
Since ASI has successfully asserted criminal usury as an affirmative defense, the loan transaction and the associated note, loan agreement, and collateral agreement are void and unenforceable (see General Obligations Law § 5-511 [unless lender is bank or savings and loan association, usurious transaction is void]; Szerdahelyi v Harris, 67 NY2d 42, 47-48 [1986]; Hammelburger v Foursome Inn Corp., 54 NY2d 580, 590 [1981] [“it would be most inappropriate to permit a usurer to recover on a loan for which he could be prosecuted” (emphasis and internal quotation marks omitted)]; Bietola v McCue, 308 AD2d 416, 416-417 [1st Dept 2003]).
Blue Wolf contends that ASI cannot raise usury as a defense to this action to enforce strict foreclosure, noting that this Court has stated that criminal usury “is strictly an affirmative defense to an action seeking repayment of a loan” (Intima-Eighteen, Inc. v Schreiber Co., 172 AD2d 456, 457 [1st Dept 1991], lv denied 78 NY2d 856 [1991]). Unlike the corporate borrower in Intima, however, ASI does not invoke the usury statutes “as a means to effect recovery” (id. at 457-458). Intima should not be construed to prohibit a borrower from raising usury as a defense to a foreclosure action (see also Seidel v 18 E. 17th St. Owners, 79 NY2d 735, 738 [1992] [usury defense raised]; Hammelburger, 54 NY2d at 584 [same]).
Blue Wolf also asks us to reform the loan transaction instead of voiding it, but an equitable remedy like reformation is unavailable to a party with unclean hands (see Speranza v Repro Lab Inc., 62 AD3d 49, 53-54 [1st Dept 2009]; Judge v Travelers Ins. Co., 262 AD2d 983, 983-984 [4th Dept 1999]). Since Blue Wolf charged criminally usurious interest, it is not entitled to equitable relief.
Finally, we reject Blue Wolfs claim that the motion court erred by dismissing this action before it determined whether ASI had defaulted. A default would have been vacated because ASI’s submissions presented a reasonable excuse and a meritorious defense (see Rockefeller v Jeckel, 161 AD2d 1090, 1091 [3d Dept 1990] [“defendant’s usury claim itself implicates sufficient public policy considerations to justify the vacatur of (a) default in the interest of justice”]; Vega Capital Corp. v W.K.R. Dev. Corp., 98 AD2d 627, 628 [1st Dept 1983] [default judgment vacated based on usury defense]).
*185 Accordingly, the order of the Supreme Court, New York County (O. Peter Sherwood, J.), entered August 29, 2011, which, to the extent appealed from as limited by the briefs, denied plaintiffs motion for partial summary judgment and granted defendant American Stevedoring, Inc.’s cross motion for summary judgment dismissing the complaint, should be affirmed, without costs.
Gonzalez, EJ., Friedman, Moskowitz and DeGrasse, JJ., concur.
Order, Supreme Court, New York County, entered August 29, 2011, affirmed, without costs.