People v Richmond Capital Group LLC (2026 NY Slip Op 00990)

People v Richmond Capital Group LLC

2026 NY Slip Op 00990

Decided on February 19, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 19, 2026

Before: Manzanet-Daniels, J.P., Scarpulla, Friedman, Chan, Hagler, JJ. 

Index No. 451368/20|Appeal No. 5885-5886|Case No. 2024-02969|

[*1]People of the State of New York, etc., Petitioner-Respondent,
vRichmond Capital Group LLC, et al., Respondents-Appellants, Viceroy Capital Funding Inc., et al., Respondents.

Kravet & Vogel, LLP, New York (Donald J. Kravet of counsel), for Richmond Capital Group LLC and Robert Giardina, appellants.
Terenzi & Confugione PC, Garden City (Ronald Terenzi of counsel), for Ram Capital Funding LLC and Tzvi Reich, appellants.
Letitia James, Attorney General State of New York (Daniel S. Magy of counsel), for respondent.

Judgment, Supreme Court, New York County (Andrew Borrok, J.), entered April 11, 2024, in favor of petitioner and jointly and severally against respondents in the amount of $77,289,631 plus interest, and bringing up for review an order, entered on or about September 15, 2023, which granted petitioner's motion for a summary determination of the petition pursuant to Executive Law § 63(12) and denied respondents' cross-motions for a summary determination dismissing the petition, unanimously modified, on the law, to vacate the monetary aspect of the judgment, remand for further proceedings in accordance with this order, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered on or about July 25, 2024, which, insofar as appealed from as limited by the briefs, denied without prejudice respondents Richmond Capital Group, LLC and Robert Giardina's motion to amend the judgment to reduce the amount thereof, unanimously dismissed, without costs, as moot.
The People bring this special proceeding pursuant to Executive Law § 63(12), alleging predatory lending practices by respondents, who funded over 3,000 transactions styled as merchant cash advances, governed by purported merchant cash advance agreements (MCAs), but which are alleged to have been fraudulent, usurious loans-in-disguise.
Supreme Court properly found respondents liable for violation of Executive Law § 63(12). Respondents engaged in repeated or persistent illegal acts within the meaning of Executive Law § 63(12) — specifically, usury. New York usury law was properly applied in determining illegality because Executive Law § 63(12) empowers the New York Attorney General to bring enforcement actions against New York-based businesses engaging in fraudulent or illegal acts in New York — even if the victims of those acts reside in other states (see People v H & R Block, Inc., 58 AD3d 415, 417 [1st Dept 2009]; Matter of People v Telehublink Corp., 301 AD2d 1006, 1009-1010 [3d Dept 2003]; New York v Feldman, 210 F Supp 2d 294, 303 [SD NY 2002]).
The subject agreements, although styled as MCAs, are properly characterized as loans subject to restrictions on usury (see Davis v Richmond Capital Group, LLC, 194 AD3d 516, 517 [1st Dept 2021]; Fleetwood Servs., LLC v. Richmond Capital Group LLC, 2023 US App LEXIS 14241, *3-4, 2023 WL 3882697, *2 [2d Cir, June 8, 2023, No. 22-1885-cv]; see generally LG Funding, LLC v United Senior Props. of Olathe, LLC, 181 AD3d 664, 665-666 [2d Dept 2020]). Although the MCAs have mandatory reconciliation provisions, no reconciliation was performed in practice, even though it was supposed to be performed on a monthly basis, and daily payments were fixed and did not represent a good faith estimate of receivables; there is no persuasive evidence of any ad hoc incidents of reconciliation (upon a merchants' request), which were subject to respondents' "sole discretion," and there is evidence that such requests were denied; bankruptcy was an express event of default in some of the MCAs, but even where it was not, repeated nonpayment was, as was breach of the MCAs, which was the case where a merchant "interrupt[ed], suspend[ed], dissolve[d] or terminate[d]" its business; and in the event of any of these circumstances, the full uncollected amount became due and respondents were empowered to enforce the personal guarantees they required the merchants to provide.
Usurious intent is also clear as a matter of law, as, absent reconciliation, the usurious interest rates can readily be calculated based on the information provided on the face of the MCAs (see Blue Wolf Capital Fund II, L.P. v American Stevedoring, Inc., 105 AD3d 178, 183 [1st Dept 2013]).
Respondents also engaged in repeated or persistent fraud within the meaning of Executive Law § 63(12). There is ample evidence of material misrepresentations in the record, both to merchants and to courts in affidavits filed to obtain judgments against merchants. The latter category of statements is not protected by the Noerr-Pennington doctrine because it falls within the sham exception thereto (see Matter of People v Northern Leasing Sys., Inc., 169 AD3d 527, 530 [1st Dept 2019]).
The MCAs were also procedurally and substantively unconscionable (see generally Gillman v Chase Manhattan Bank, 73 NY2d 1, 10-12 [1988]). Substantive unconscionability is clear from the MCAs' exorbitant and criminally usurious interest rates, among other things. As to procedural unconscionability, it is not dispositive that many, although not all, of the merchants were sophisticated businesspeople and all had prior experience with MCAs, and respondents misrepresented the terms and nature of the MCAs and used other high-pressure tactics.
Joint and several liability was appropriate with respect to respondents RAM Capital Funding LLC and Tzvi Reich because they participated in a common enterprise with the other respondents. Reich claims to have been merely a broker, but the record (and his own admissions) reflects that he was sometimes involved in funding, servicing, and collecting on the MCAs, as well as sharing an office space with the other respondents related to MCAs originated by RAM Capital Funding LLC.
Personal and joint and several liability was also appropriate with respect to respondent Robert Giardina because the evidence reflects that he personally participated in MCA negotiations and funding decisions, directed the wrongful withdrawal of payments on holidays, executed fraudulent judgment affidavits, oversaw respondent Jonathan Braun, and otherwise participated in a common enterprise with the other respondents. An adverse inference may also be drawn from Giardina's invocation of the Fifth Amendment (see Republic of Haiti v Duvalier, 211 AD2d 379, 386 [1st Dept 1995]).
Further proceedings are, however, necessary with respect to the amount of the monetary judgment. Judgment against the defendants is appropriate to the extent it is in the form of restitution that will make the victims whole, without creating a windfall (see e.g. People ex rel. Spitzer v Applied Card Sys, Inc., 11 NY3d 105, 124-125 [2008]; see also People v Trump, — AD3d &mdash, 2025 NY Slip Op 04756, 237 NYS3d 443, 509 [1st Dept 2025]). The People are not entitled under the facts of this case to the additional remedy of disgorgement (id.).
However, the People failed to meet their initial burden with respect to the amount of damages insofar as they made no attempt to exclude repayments of principal from their proposed calculation (see generally People v Tzitzikalakis, 8 NY3d 217, 220-222 [2007]; Trump, 237 NYS3d at 509; cf. People v Greenberg, 27 NY3d 490, 497-498 [2016]). This failure was due, at least in part, to respondents' failure to provide appropriate documentation. Some attempt by the People must, however, be made (even if imprecise) to reduce the total amount respondents received from merchants to account for the portion that was for the repayment of principal.
The Supreme Court must also consider the issue of offsets in the first instance, including (but not limited to) the amounts paid by the defendants in the settlement of the claims brought against them by the merchants. Double recovery is impermissible, and flies in the face of the notion of restitution by providing a windfall (see eg EEOC v Waffle House, Inc., 534 US 279, 297 [2002]; People ex rel. Spitzer v Applied Card Sys, Inc., 11 NY3d 105, 124-125 [2008]). THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 19, 2026